UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

O.W.S. (XXX-XX-8332)                         CIVIL ACTION NO. 10-cv-1828

VERSUS                                        JUDGE STAGG

U.S. COMMISSIONER SOCIAL                      MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

O.W.S. ("Plaintiff") was born in 1959, has a high school education plus one year of college, and his past work experience includes certified nurse assistant, grocery store clerk and manager, and instrument panel inspection. He applied for disability benefits based on back problems, mental health, and other issues. ALJ Romona Scales conducted an evidentiary hearing and issued a written decision that denied the claim. Plaintiff appealed to the Appeals Council, where he submitted additional evidence regarding his mental health. The Appeals Council issued a brief decision that denied the request for review. It acknowledged the additional evidence but found that the "information does not provide a basis for changing the Administrative Law Judge's decision."

Plaintiff then filed a complaint with this court seeking judicial review pursuant to 42 U.S.C. § 405(g). He raises a single issue: The Commissioner erred in rejecting Plaintiff's impairments of depression and personality disorder as severe impairments. For the reasons

that follow, it is recommended that the Commissioner's decision to deny benefits be reversed and the case be remanded to the Commissioner for further proceedings.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Summary of the ALJ's Decision**

The Social Security Act entitles certain "disabled" persons to disability benefits or supplemental security income benefits. The Act defines disabled persons as those who are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. The Act requires the Commissioner to establish by regulation uniform standards for the adjudication of claims.

The Commissioner has promulgated regulations that include what is commonly referred to as the five-step sequential analysis. See 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for supplemental security income). The analysis is described in cases such as Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003) and Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). A finding at any step that the claimant is or is not disabled ends the analysis.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2009 (step one), and he suffered from the following severe impairments (step two): lumbar and cervical degenerative disc disease, left temporomandibular joint disorder, obesity, and obstructive sleep apnea. She found at step three that the impairments did not meet the criteria of any listed impairment.

The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to some additional limitations such as no climbing of ladders, ropes, or scaffolds, and the ability to reach overhead only occasionally. At step four, which asks whether the claimant is capable of performing his past relevant work, the ALJ heard testimony from a vocational expert ("VE"). The VE testified that a person with Plaintiff's age, education, and RFC could perform the demands of his past jobs except the nursing position. Tr. 52. The ALJ accepted that testimony and found at step four that Plaintiff was not disabled. Tr. 21.

**Analysis**

Plaintiff complains that the ALJ erred at step two when she found that his mental impairments of depression and a personality disorder were not severe. At step two, deciding whether a claimant suffers from severe impairments, the Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). See also Loza v. Apfel, 219 F.3d 378, 390-92 (5th Cir. 2000).

The ALJ asked Plaintiff at the hearing if he ever had trouble relating to other people, to the point of hitting someone, and Plaintiff said, "When I get frustrated, yes." He said he was fired from his last job because he made paranoid accusations against a person. Before that, he had a fight, in which he hurt his hand and required a trip to the hospital. Tr. 43. Plaintiff said most of his days are sad, and he spends them in bed. He testified that he had not received any counseling before the June 15, 2009 hearing, but he said he was in line to do so at the VA Hospital. Tr. 43-44. Plaintiff's wife testified that Plaintiff is always afraid that someone is looking at him, and he will not let her open the blinds. Tr. 48.

In September 2008, about a year before the hearing, clinical psychologist Mark Dulle, Ph.D. performed a consultative examination of Plaintiff at the request of the Agency. Plaintiff told the examiner that he cried all the time, but he was not tearful that day. He

claimed auditory and visual hallucinations, but offered no clinical evidence.  Dr. Dulle observed that Plaintiff was negative and complaining, but vague and somewhat histrionic in most of his complaints.  He was "minimally cooperative" and "did not appear authentic in his behavior."  Dr. Dulle concluded that Plaintiff "presents as a personality disordered individual who, in my opinion, is attempting to portray himself considerably more impaired than he is in reality."  He added that Plaintiff "may, indeed, have some bona fide psychopathology woven into his personality fabric, but his overall presentation makes it impossible to verify."  Tr. 297-300.

The ALJ, citing the Stone legal standard for a severe impairment, assessed this evidence.  He discounted Plaintiff's claims of spending most of his time in bed, noting that Plaintiff performs chores around the house, attends church regularly, often shops with his wife, and is able to go out alone.  She also discussed Dr. Dulle's findings, then found that any mental health problems Plaintiff experienced were such slight abnormalities that they would have only a minimal effect on his ability to engage in work activity.  Tr. 17-18.

Plaintiff's counsel filed a memorandum (Doc. 200) with the Appeals Council that attached additional evidence, including records from the VA for treatment given after the June 2009 hearing. Under Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005) the court must consider, in determining whether there is substantial evidence to support the Commissioner's final decision, evidence that was submitted for the first time to the Appeals Council.

The VA records show that Plaintiff was brought to the emergency room in July 2009 because of homicidal and suicidal ideations. Plaintiff reported during that visit that he had been hospitalized for a nervous breakdown when he served in the military, and he had been discharged after he told an Army psychiatrist that the next time he saw the company commander, and he had an M-16 in his hand, he would shoot the commander. Plaintiff also claimed that the Army blew up his car, planted marijuana seeds in his room, and otherwise tried to harm him. Plaintiff reported recently hearing voices telling him to kill himself and to shoot mean and stupid people, but he denied any current hallucinations. His GAF was rated 45, which indicates serious symptoms. Tr. 615-21.

Plaintiff was then examined by Dr. Overdyke, a psychiatrist, who assessed a GAF score of 36, which indicates major impairments in several areas. He recommended in-patient treatment, but Plaintiff and his wife requested out-patient care. Dr. Overdyke prescribed Prozac and an anti-psychotic medication. Tr. 608-10.

Plaintiff saw Dr. Nazeer at the VA for a follow-up, as directed, about 10 days later. Plaintiff reported he was still very depressed, hearing fewer negative auditory hallucinations, having crying spells, but not having further suicidal ideations. His GAF was assessed at 39. The prescription for Prozac was continued, but the other prescription was changed. Tr. 597-99. Plaintiff reported at an August 18, 2009 visit that he had been having worsening anxiety attacks. Valium had helped, but Plaintiff sometimes had to breath in a paper bag during attacks. He was still feeling depressed and hearing voices, and the Prozac had sexual side

effects. Dr. Nazeer stopped the Prozac, started Zoloft, and continued Diazepam and Abilify. Tr. 585-87.

Plaintiff was seen by Dr. Maria Aybar-German at the VA in September 2009. Plaintiff reported still feeling anxious and depressed, but he was improved since his last visit. He still heard voices, they made derogatory comments about him, but they did not tell him to kill himself. He also claimed visual hallucinations of scary shadows, and he felt like he was being monitored. The physician reported that Plaintiff was cooperative and had fair eye contact. His GAF was assessed at 40, and his medications were continued or increased. Tr. 579-81. Plaintiff gave a similar report in October 2009, and Dr. Aybar-German adjusted his medications. Tr. 576-78. Plaintiff told Dr. Aybar-German at a November visit that his wife had started working, and being alone for a long time each day had precipitated panic attacks. The voices had decreased significantly, but he continued to see shadows. His GAF was 50. His medications were continued, and he was encouraged to use Valium as needed for panic attacks. Tr. 559-61. At the request of his treating physician, Plaintiff reported to a group therapy at the VA in December 2009. Tr. 546-53. The preliminary assessment of the group therapist included major depressive disorder, recurrent, moderate with psychotic features, and anxiety disorder, NOS.

Dr. Aybar-German completed a medical source statement, about one month before the ALJ issued her decision, to assess what Plaintiff could do despite his mental impairment. The form defined Poor/None as the complete loss of ability to perform a named activity in

regular, competitive employment and in a sheltered work setting; the patient could do so only to meet basic needs at home. The physician indicated that level of ability in eight of the fourteen categories of mental abilities, such as the ability to maintain attention for extended periods, maintain regular attendance, sustain ordinary routine without special supervision, respond appropriately to criticism from supervisors, and to get along with co-workers. She rated him Fair in the other six categories. The form defined Fair as a substantial loss of ability to perform the named activity in regular employment and, at best, the ability to do so only in a sheltered work setting with special considerations and attention. Tr. 623-24.

The ALJ did not have any of this evidence before her. She based her decision largely on Plaintiff's testimony, evidence of his daily activities, and Dr. Dulle's consultative report. The Appeals Council, on the other hand, did have this additional evidence from treating sources in hand.

The VA records are fairly strong evidence of serious mental health impairments that satisfy the minimal Stone standard. The records, particularly the report of the treating physician, are not easily construed to depict such a slight abnormality that it would not be expected to interfere with a person's ability to work. The Appeals Council found that the information did not provide a basis for changing the ALJ's decision, but it gave no reasons for that conclusion.

The undersigned has taken the position that it "is not appropriate to automatically reverse merely because the Appeals Council failed to explain the weight it afforded evidence

first presented to it." Metcalf ex rel. ANM v. Commissioner, 2009 WL 5174368, *5 (W.D. La. 2009). The undersigned acknowledged that it may be unrealistic to expect the overburdened Appeals Council to give detailed reasons in all of the many such cases presented to it, but a lack of reasoning behind the Agency's final decision may leave the court guessing in some cases as to the Agency's rationale, which makes it difficult for the court to fulfill its limited role of reviewing the Agency decision for substantial evidence. Id.

When the Commissioner has failed to address a significant line of evidence, the undersigned has sometimes reversed and remanded so that the court would not be put in the position of weighing the overlooked evidence and in effect deciding the case de novo. See, e.g., GST v. Commissioner, 2009 WL 3031678 (W.D. La. 2009). See also Audler v. Astrue, 501 F.3d 446 (5th Cir. 2007) (reversing when ALJ failed to state any reason for adverse determination at step three despite evidence to support the claim). The court has not, however, reversed in such cases unless the omission was so significant as to prevent effective judicial review or deprived the agency decision of substantial supporting evidence.

This case falls into the category where reversal and remand is required. The reports and opinions of treating physicians are perhaps the strongest evidence that can be presented in a disability hearing. This record contains a significant amount of such evidence that weighs against the Commissioner's step two decision, and there is no explanation for why it could have been discounted to the extent it was. A mistake at step two of the analysis does not always require reversal and remand. It may be that the additional severe limitation that

is suggested would not have made a difference in the ultimate decision. Here, however, the VE testified that if a person had the same limits as found by the ALJ but had even moderate[1] limits in the ability to carry out detailed tasks, maintain attention and concentration, interact with the general public, and the like, it would eliminate all but one of the identified jobs. Tr. 52-53. The evidence at issue could reasonably and easily support a finding of more than a moderate limitation with respect to these and other mental abilities, so there is a reasonable likelihood that a step two mistake in this case would affect the outcome of the case. Under these circumstances, the court cannot say there is substantial evidence to support the Commissioner's decision.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand). Plaintiff's counsel is strongly encouraged to ensure that all relevant records are before the Agency at the time the next decision is made.

---

[1] The ALJ did not define moderate when posing the questions, but ALJs often define it to mean "a moderate limitation in the area but the individual is still able to function satisfactorily." See R.E.H. v. Commissioner, 2011 WL 3608148 (W.D. La. 2011).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of February, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE